IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL M., BARBARA R., and LILLIAN M.,<br><br>Plaintiffs,<br>vs.<br><br>NEXSEN PRUET GROUP MEDICAL & DENTAL PLAN and COMPANION BENEFIT ALTERNATIVES,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO TRANSFER VENUE<br><br>CASE NO. 2:17-CV-1236 TS<br>Judge Ted Stewart |

This matter is before the Court on Defendants Companion Benefit Alternatives' ("CBA") and Nexsen Pruet Group Medical & Dental Plan's ("the Plan") (collectively, "Defendants") Motions to Transfer Venue. For the following reasons, the Court will grant the Motions.

I.     BACKGROUND

Plaintiffs Michael M., Barbara R., and Lillian M. (collectively "Plaintiffs") are individuals residing in Richland County, South Carolina. Michael is employed by Nexsen Pruet, LLC, and is a participant in the Plan. Nexsen Pruet is the Plan Administrator and Barbara and Lillian are beneficiaries. The Plan is a self-funded employee welfare benefits plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). CBA, located in Columbia, South Carolina, provides the Plan with utilization management services and reviews member claims for behavioral healthcare services.

In 2015 and 2016, Lillian received treatment for certain medical conditions at Uinta Academy ("Uinta") in Utah. Following treatment, the medical bills were submitted to the Plan's third party claims processing administrator, Planned Administrators Inc., in South Carolina.

1

Those claims were denied on the basis that the treatment did not meet the Plan's guidelines, and an appeal was submitted to CBA. CBA affirmed the denial in a letter directed to Uinta on March 17, 2016. On May 25, 2016, Nexsen Pruet issued a decision affirming the denial,[1] and, pursuant to the mandated external review section of the Patient Protection and Affordable Care Act, an external review of the denial was performed by Medical Review Institute of America ("MRI"), which is not a Plan entity and is based in Utah. MRI also affirmed the denial of Plaintiffs' claims and Plaintiffs filed this action asserting that CBA and the Plan wrongfully denied Plaintiffs' claims under the terms of the Plan and ERISA, and failed to provide Plaintiffs with full and fair review of the initial denial.[2]

The Plan contends that venue is improper in Utah under 29 U.S.C. § 1132(e)(2) and Defendants seek transfer to the United States District Court for the District of South Carolina under 28 U.S.C. § 1404(a). Defendants argue that South Carolina is the proper forum because the action could have been brought there originally, the Plan is administered in South Carolina, the services provided by CBA were performed in South Carolina, the alleged conduct and actions that Plaintiffs contend constitute breaches of ERISA and the Plan occurred in South Carolina, all of the parties are located in South Carolina, and Plaintiffs communicated with CBA from South Carolina throughout the appeals process.

---

[1] That decision was made at a meeting in Columbia, South Carolina, and involved five people from South Carolina and one person from North Carolina.

[2] The fact that services were provided by Uinta and the cost of those services are not in dispute.

## II. DISCUSSION

A. *Venue is Proper in Utah*

An action brought under ERISA "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."[3]

There is no dispute that the Plan is administered in South Carolina rather than Utah, so venue is not proper in Utah under the first prong of the statute. Looking to the second prong,

> [s]everal cases establish that, under ERISA, the duty is owed to the plan participant and any breach of duty owed under the plan occurs at the place where the plan participant resides. The place is the location where the payment is to be made, even though the services may have been provided at an out-of-state location.[4]

In this case, while the services were provided at an out-of-state location, Michael, the plan participant, is a resident of South Carolina and payment was to be made to him in South Carolina. Therefore, the Court finds that the alleged breaches occurred in South Carolina and venue is not proper in Utah under the second prong of the statute.

Finally, under the third prong, "a corporation resides wherever personal jurisdiction is proper."[5] "Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers

---

[3] 29 U.S.C. § 1132(e)(2).

[4] *Island View Residential Treatment Ctr. v. Kaiser Permanente*, No. 1:09-cv-3-CW, 2009 WL 2614682, at *2 (D. Utah Aug. 21, 2009); *IHC Health Servs., Inc. v. Eskaton Props., Inc.*, No. 2:16-cv-3-DN, 2016 WL 4769342, at *4 (D. Utah Sept. 13, 2016) ("The breach of an ERISA plan occurs at the place the policy holder resides and would have received benefits.") (internal quotation marks omitted); *see also Gail F. v. QualCare, Inc.*, No. 1:15-cv-130-DN, 2017 WL 589112, at *2 (D. Utah Feb. 14, 2017) ("Plaintiffs argue that payment was due to [the place of treatment] in Utah and therefore the breach occurred in Utah, but that position is not supported by case law.").

[5] *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 n.3 (10th Cir. 2000).

jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."[6] Because this is a federal question case and § 1132(e)(2) authorizes nationwide service of process, this Court has personal jurisdiction over Defendants so long as due process is satisfied.[7]

Under ERISA, "the personal jurisdiction requirement flows from the Due Process Clause of the Fifth Amendment and . . . the proper focus for a personal jurisdiction test should be on protecting an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum."[8] In order for a defendant to demonstrate "that his liberty interests actually have been infringed," he must show "that the exercise of jurisdiction in the chosen forum will make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent."[9]

To determine whether a defendant meets its burden, courts consider the following factors:

> (1) the extent of the defendant's contacts with the place where the action was filed;
> (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including
>   (a) the nature and extent and interstate character of the defendant's business,
>   (b) the defendant's access to counsel, and
>   (c) the distance from the defendant to the place where the action was brought;
> (3) judicial economy;

---

[6] *Id.* at 1209 (internal quotation marks omitted).

[7] "There is no question that the last clause of § 1132(e)(2) authorizes nationwide service of process. When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Id.* at 1210 (internal quotation marks omitted).

[8] *Id.* at 1211 (internal quotation marks omitted); *see also Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015) ("'[A] different standard' than the traditional 'minimum contacts' analysis applies to determine personal jurisdiction under the Due Process Clause.").

[9] *Peay*, 205 F.3d at 1212 (internal citations and quotation marks omitted).

(4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and

(5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.[10]

The Tenth Circuit has emphasized "that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. Certainly, in this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened."[11]

Considering the first factor, neither CBA nor the Plan have much, if any, contact with Utah. Plaintiffs allege in the Complaint that CBA does business in Utah through Regence BlueCross BlueShield of Utah, the local Blue Cross Blue Shield affiliate, but CBA denies this and Plaintiffs do not argue this in their Opposition. Plaintiffs also argue that the Plan has contact through MRI, but this argument is weakened by the fact that the external review was mandatory and Plaintiffs concede that the Plan may not have selected MRI as its external reviewer. Finally, Plaintiffs allege that CBA and the Plan have undoubtedly paid claims in Utah, but Plaintiffs fail to provide any evidence of this. Therefore, the first factor weighs against finding personal jurisdiction.

Second, there is some inconvenience to Defendants if they have to defend this action in Utah since the distance between Utah and South Carolina is great. However, Defendants are already represented by counsel here, and they may seek admission of South Carolina counsel that they are more familiar with. Finally, while Defendants do business in South Carolina and nearby

---

[10] *Id.*

[11] *Id.* at 1212–13.

states, both have the ability to deal with out-of-state claims and neither party has alleged any inability to defend this case. Therefore, the inconvenience is only minor under this factor.

Third, judicial economy is most often better served when all of the parties reside in the forum state as there are less scheduling and travel concerns throughout the proceedings and less resources are expended by all involved parties. With that said, it seems as though neither court would be more unduly burdened than the other if it was to take on this case, except for the previously stated scheduling and traveling issues this Court would have to deal with.[12] This factor, therefore, weighs more in favor of inconvenience.

Finally, while it is unlikely that there will be any discovery in this case since it will mainly involve an administrative review, any discovery would largely take place in South Carolina since any witnesses or documents related to the denial of Plaintiffs' claim are in South Carolina. And while there may be some need for discovery regarding the details of treatment from Uinta, or discovery in relation to MRI's involvement, South Carolina would still be more convenient for all parties involved.

Plaintiffs, however, argue that this case is similar to *Peay v. BellSouth Med. Assistance Plan* and the Court should find that it may assert jurisdiction over Defendants. In *Peay*, none of the parties resided in Utah where the case was filed, and the plan was administered and allegedly breached elsewhere. However, the defendants precertified the plaintiff's treatment at a Utah hospital and rendered benefits in Utah. Those facts are similar to this case, but here, Lillian's treatment was not pre-certified and no benefits were rendered in Utah by Defendants.

However, in light of the broad standard set forth above, and despite the factors showing some inconvenience to Defendants if they are forced to litigate this action in Utah, Defendants

---

[12] *See infra* p.10–11 (providing numbers and statistics for caseloads in the two districts).

failed to show that their inconvenience rises to the level of constitutional concern. Defendants are corporations who routinely deal with out-of-state claims and have the resources to litigate this action in Utah. Additionally, while Utah is some distance from South Carolina, "modern methods of communication and transportation greatly reduce the significance of this physical burden."[13] Therefore, the Court finds that it has personal jurisdiction over Defendants and venue is proper in Utah under the third prong of the statute.

B. *The Case Should be Transferred to South Carolina Under § 1404(a)*

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[14] Courts are given this discretion in order to decide motions to transfer venue on an "'individualized, case-by-case consideration of convenience and fairness.'"[15]

"The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient."[16] "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of

---

[13] *Peay*, 205 F.3d at 1213 ("[E]ven though defendants may be inconvenienced by defending this action in Utah, they cannot show that this burden rises to the level of constitutional concern. Defendants are large corporations operating throughout the southeastern United States. They surely have the resources to access counsel in Utah. And, while Utah may be some distance from the southeast, modern methods of communication and transportation greatly reduce the significance of this physical burden.").

[14] 28 U.S.C. §1404(a). "§ 1404(a) does not condition transfer on the initial forum's being 'wrong.' And it permits transfer to any district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S.Ct. 568, 579 (2013).

[15] *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

[16] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).

venue."[17] To determine whether the party seeking transfer meets its burden, a court should consider:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[18]

Additionally, "the moving party must provide evidence showing the inconvenience; mere allegations are not sufficient to meet the moving party's burden of proof."[19]

First, there is no dispute that this action could have been brought in South Carolina. The Plan is administered in South Carolina, the alleged breaches occurred in South Carolina, and all of the parties reside in South Carolina. The Court, therefore, will consider each of the relevant factors to determine whether the case should be transferred for convenience and fairness.

1. Plaintiff's Choice of Forum.

   Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed. The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district. Courts also accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.[20]

First, Plaintiffs reside in South Carolina. Second, the operative facts in this case have no

---

[17] *Empl'rs Mut. Cas. Co. v. Bartile Roofs*, 618 F.3d 1153, 1167 (10th Cir. 2010) (internal citations omitted) (internal quotation marks omitted).

[18] *Chrysler Credit Corp.*, 928 F.2d at 1516 (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

[19] *Briesch v. Auto. Club of S. Cal.*, 40 F. Supp. 2d 1318, 1322 (D. Utah 1999).

[20] *Empl'rs Mut. Cas. Co.*, 618 F.3d at 1167–68 (internal citations and quotation marks omitted).

material relation or significant connection to Utah. All of the parties reside in South Carolina, the Plan is administered in South Carolina, and the alleged breaches occurred in South Carolina. The operative facts center on those alleged breaches and Defendants' decisions to deny payment for Lillian's claim. Additionally, the majority, if not all, of the documents or witnesses involved in those decisions are not located in Utah. The only decision made in Utah was MRI's denial, but MRI is not a party to this action. Finally, Plaintiffs' only connection to Utah is that Lillian was treated in Utah, but the fact that she was treated and the related costs are not at issue in this case. For these reasons, the Court finds that Plaintiffs' choice of forum is not controlling.[21]

2. Accessibility of Witnesses

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."[22] "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of the[ir] testimony'; and (3) 'show[ ] that any such witnesses were unwilling to come to trial . . .[,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'"[23]

---

[21] *See e.g.*, *IHC Health Servs., Inc.*, 2016 WL 4769342, at *8 ("With regard to [Plaintiff] IHC's choice of forum, Utah lacks any significant connection with the operative facts of this case other than the fact that it is where [the plan participant] received treatment from IHC. While [Defendant] Eskaton communicated with IHC during the administrative appeal process of the claims, the Plan was not administered in Utah, Eskaton's decisions about payments were not made in Utah, and the alleged breaches of ERISA and the Plan did not occur in Utah."); *Island View Residential Treatment Ctr.*, 2009 WL 2614682, at *3 ("In this case, the [plaintiffs'] choice of forum is not a controlling factor. There is little or no connection between the operative facts relating to coverage and this forum. Neither the [plaintiffs] nor [the defendant] has a tie to Utah. The plan was not administered or breached in Utah. The relevant documents are not located in Utah and the witnesses, if any discovery is to be conducted, are not in Utah. Under these facts, plaintiffs' choice of forum is not sufficient to override the considerations that dictate a transfer to the Northern District of California.").

[22] *Empl'rs Mut. Cas. Co.*, 618 F.3d at 1169 (internal quotation marks omitted).

[23] *Id.* (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (alteration in original)).

In this case, the convenience of the witnesses is not as important since a court's review in ERISA cases is generally limited to the administrative record.[24] There would be some inconvenience to any witnesses if witnesses are required, however, since the operative facts of the case occurred almost exclusively in South Carolina and any potential witnesses involved in administering the Plan and denying Plaintiffs' claims are in South Carolina. These facts suggest that Utah would be an inconvenient forum for any potential witnesses, and while Defendants provide no specifics regarding potential witnesses, a common sense conclusion may be made that because the operative facts are centered in South Carolina, the majority, if not all, of the relevant witnesses will also be found in South Carolina and it would be inconvenient for them to appear before the Court in Utah.

3. Congested Dockets

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[25]

An analysis of those statistics in Utah and South Carolina suggests that the burden on either court would be similar. The median time frame from filing to disposition in Utah is 7.9 months, as opposed to 17 months in South Carolina.[26] However, the median time frame from

---

[24] *IHC Health Servs., Inc.*, 2016 WL 4769342, at *9 ("Although the convenience of the witnesses is not as important an issue in this case because the review in ERISA cases is generally limited to the administrative record, the most relevant witnesses and documents are located in California, not Utah, because California is where the Plan is administered, where [the defendant] is headquartered, and where [the defendant] made the decision to partially deny payment for [the plan participant's] treatment and care.") (internal quotation marks omitted).

[25] *Empl'rs Mut. Cas. Co.*, 618 F.3d at 1169.

[26] UNITED STATES DISTRICT COURTS, NATIONAL JUDICIAL CASELOAD PROFILE (12-Month Period Ending Dec. 31, 2017), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2017.pdf.

filing to trial is 35.5 months in Utah and 21.1 months in South Carolina.[27] The average number of pending cases per judge is 480 in Utah and 521 in South Carolina.[28] Finally, in Utah, the average weighted filing per judge is 544, and in South Carolina it is 456.[29] These statistics are evenly split, and the Court finds that the issue of congested dockets does not weigh in favor or against transfer.

4. Conflict of Laws, Local Law, and Enforceability.

This is a federal question case involving application of federal law, so "questions arising in the areas of conflicts of law or local law will not occur in this case."[30] Regarding enforceability, any judgment against Defendants would be easier to enforce in South Carolina since that is where Defendants reside. The issue of enforceability, therefore, weighs in favor of transfer.

5. Privacy Concerns and Location of Counsel

Plaintiffs' main argument regarding any inconvenience they would experience if they had to litigate in South Carolina deals with their privacy concerns. They argue that "[t]he stigma attached to mental illness and mental health conditions is real and significant. Lilly's future educational and employment opportunities, among other things, could be profoundly affected should the information that she was in treatment for her mental health conditions become public knowledge."[31] The Plan argues in response that the desire for privacy does not play a role in the operative facts and that, "[i]n their Complaint Plaintiffs describe in detail Lilly's life from an

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *See IHC Health Servs., Inc.*, 2016 WL 4769342, at *8.

[31] Docket No. 12, at 10.

11

early age. Plaintiffs were not required to include such detailed information about Lilly's personal history or her medical diagnoses, or to characterize her personality as they have done."[32]

While the Court understands Plaintiffs' privacy concerns, there are ways to ensure privacy in South Carolina just as there are in Utah. For instance, moving to seal certain portions of the proceedings is a better and more effective way to ensure privacy than choosing a distant forum. As such, Plaintiffs' privacy concerns are given little weight in deciding whether to transfer the case.

Additionally, Plaintiffs argue that South Carolina would be inconvenient because Plaintiffs' counsel is located in Utah. "The Tenth Circuit has not addressed this issue, but the Seventh Circuit has stated that convenience of counsel is immaterial and should not be considered as a factor in determining whether transfer is proper under 28 U.S.C. § 1404(a)."[33] Plaintiffs' counsel also has, and is currently, engaged in litigation in several different circuits across the country, and, because this case will largely be limited to the administrative record, there should be little need for Plaintiffs' counsel to travel back and forth to South Carolina. For these reasons, the burden on counsel is not dispositive.

6. Interest of Justice

The above factors weigh in favor of finding that Utah is an inconvenient forum, but Plaintiffs argue that Defendants failed to provide any affidavits or similar evidence demonstrating this. In support of their argument they cite to *Briesch v. Automobile Club of Southern California*, a case in which the court found that the defendant failed to provide affidavits or other evidence demonstrating that Utah was an inconvenient forum for itself or its

---

[32] Docket No. 13, at 5.

[33] *Island View Residential Treatment Ctr.*, 2009 WL 2614682, at *3; *see Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 303 (7th Cir. 1955).

witnesses and, therefore, denied defendant's motion to transfer. However, in *Briesch*, the plaintiffs did not reside in Utah, the forum where the motion to transfer was pending, or the forum to which transfer was being sought. Further, convenience is not the only consideration in deciding a motion to transfer.

"[C]onvenience is not the only policy underlying § 1404(a): the interest of justice in the proper venue should not be forgotten."[34] In *Danny P. v. Catholic Health Initiatives*, the defendant failed to show that "the lack of facts connecting the case to Utah create[d a] significant inconvenience."[35] Regardless, the court found that convenience and justice would best be served by transferring the case since the plaintiffs did not reside in Utah, and the plan was not administered, adjudicated, or breached in Utah.[36]

Similar to *Danny P.*, the interest of justice in this case strongly favors transfer to South Carolina as all parties reside in South Carolina, the plan was not administered, adjudicated, or breached in Utah, and all other operative facts are centered in South Carolina.[37]

---

[34] *Danny P. v. Catholic Health Initiatives*, No. 1:14-cv-22-DN, 2015 WL 164183, at *3 (D. Utah Jan. 13, 2015).

[35] *Id.*

[36] "[Defendant] CHI has not shown that the lack of facts connecting the case to Utah creates significant inconvenience. But convenience is not the only policy underlying § 1404(a): the interest of justice in the proper venue should not be forgotten. CHI's arguments under the ERISA venue provision weigh heavily on the interests of justice. CHI argues that convenience and justice would be better served in the Western District of Washington where the P. family resides and therefore where the plan was breached. That could also be true of Illinois, where the plan was administered and adjudicated, or Kentucky and Colorado, where CHI is headquartered. Any of those venues, and especially the Western District of Washington, bears a greater, and therefore a more just connection to the case than Utah." *Id.*

[37] In *IHC Health Servs., Inc.*, the court found that California, rather than Utah, was the forum with the greatest connection to the operative facts since California was where the plan was administered, where the alleged breaches occurred, where the plan administrator resided, and where it would be most convenient for witnesses to appear. 2016 WL 4769342, at *7–9.

Therefore, the Court finds that the factors for convenience weigh in favor of transfer and the interests of justice will best be served by transferring this case to South Carolina.

### III. CONCLUSION

It is therefore

ORDERED that Defendants' Motions to Transfer Venue (Docket Nos. 4 & 10) are GRANTED. The Clerk of Court is directed to transfer the case to the United States District Court for the District of South Carolina.

DATED this 19th day of March, 2018.

BY THE COURT:

Judge Ted Stewart